# EXHIBIT A

Filing # 72195461 E-Filed 05/15/2018 06:39:31 PM

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.   CASE STYLE

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

Case No.:_____
Judge: _____

Karen Shannon
Plaintiff
        vs.
National Railroad Passenger Corporation
Defendant

### II.   TYPE OF CASE

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure $0 - $50,000
  - ☐ Commercial foreclosure $50,001 - $249,999
  - ☐ Commercial foreclosure $250,000 or more
  - ☐ Homestead residential foreclosure $0 – 50,000
  - ☐ Homestead residential foreclosure $50,001 - $249,999
  - ☐ Homestead residential foreclosure $250,000 or more
  - ☐ Non-homestead residential foreclosure $0 - $50,000
  - ☐ Non-homestead residential foreclosure $50,001 - $249,999

- ☐ Non-homestead residential foreclosure $250,00 or more
- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more

- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical
  - ☐ Malpractice – other professional
- ☒ Other
  - ☐ Antitrust/Trade Regulation
  - ☐ Business Transaction
  - ☐ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☐ Discrimination-employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐  No ☒

**III.    REMEDIES SOUGHT** (check all that apply):
- ☒    Monetary;
- ☒    Non-monetary declaratory or injunctive relief;
- ☒    Punitive

**IV.    NUMBER OF CAUSES OF ACTION: (    )**
(Specify)

6 causes of action:race, gender, age, handicap discrimination and retaliation pursuant to Florida Civil Rights Act, §760.10, Fla. Stat. et seq. andFlorida Whistleblower Act, §448.102, Fla. Stat.

**V.    IS THIS CASE A CLASS ACTION LAWSUIT?**
- ☐    Yes
- ☒    No

**VI.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
- ☐    No
- ☒    Yes – If "yes" list all related cases by name, case number and court:

Shannon v. National Railroad Passenger, Case No.: 1:17-cv-23314-UU, Southern District of Florida

**VII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
- ☒    Yes
- ☐    No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature s/ Ria N. Chattergoon          FL Bar No.:  15099
    Attorney or party                                               (Bar number, if attorney)

    Ria N. Chattergoon      05/15/2018
    (Type or print name)                                Date

Filing # 72195461 E-Filed 05/15/2018 06:39:31 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

Case No.:

KAREN SHANNON,

            Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK,

            Defendant.

## COMPLAINT

Plaintiff, KAREN SHANNON ("Plaintiff"), sues the Defendant, NATIONAL

RAILROAD PASSENGER CORPORATION d/b/a AMTRAK ("Defendant" or "the

organization"), and alleges as follows:

## NATURE OF ACTION

This action involves the application of race, gender, age, handicap discrimination

and retaliation pursuant to Florida Civil Rights Act, §760.10, Fla. Stat. *et seq.* ("FCRA"); and

retaliation pursuant to the Florida Whistleblower Act, §448.102, Fla. Stat. *et seq.* ("FWA").

## JURISDICTION AND VENUE

1.     This court has jurisdiction as the damages sought by Plaintiff exceed $15,000.00.

2.     Venue is proper because the acts complained of by Plaintiff occurred within this

judicial district and because the Defendant has a principal place of business within this judicial

district.

## PROCEDURAL REQUIREMENTS

3.     On or about May 19, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Florida Commission on Human Relations ("FCHR").

4.     On or about February 14, 2018, Plaintiff received the EEOC's Notice of Right to Sue with regard to the Charge of Discrimination referenced in the preceding paragraph.

5.     This Complaint is filed within 90 days of Plaintiff's receipt of the Right to Sue letter referenced in the preceding paragraph and within 180 days as prescribed by the FCRA.

6.     All conditions precedent to the bringing of this action have been satisfied.

## PARTIES

7.     At all times material, Plaintiff was and is a resident of Miami-Dade County, Florida.

8.     At all times material hereto, Plaintiff was an "aggrieved person" as defined by the FCRA.

9.     Defendant is a corporation organized and doing business pursuant to the laws of the State of Florida, with a principal place of business in Miami-Dade County, Florida.

10.    At all times relevant to this Complaint, Defendant employed more than 15 employees and remains an "employer" as that term is defined in the FRCA.

11.    At all times material hereto, Plaintiff was an "employee" as defined by the FWA, Fla. Stat. § 448.101(2).

12.    At all times material hereto, Defendant was Plaintiff's "employer" as defined by the FWA, Fla. Stat. § 448.101(3).

2

## GENERAL ALLEGATIONS

13.     Plaintiff is a fifty-six (56) year old African-American female.

14.     In 2002, Plaintiff made an internal complaint of discrimination against Thomas Hall. She was removed from his supervision as a result of her complaint.

15.     From May 2013 until her termination on May 25, 2017, Defendant employed Plaintiff as Route Director for Silver Service, in Miami.

16.     For over twenty-eight (28) years, Plaintiff performed her work admirably and without any discipline.

17.     During her twenty-eight (28) years of employment, Defendant reorganized or restructured over eight times. Plaintiff always landed a subsequent position with Defendant.

18.     In May 2013, during a reorganization, Plaintiff's position was eliminated and she was forced to reapply for another position within the organization. Plaintiff was given over four and a half months to obtain another position with Defendant.

19.     Although Plaintiff was asked to list her choice of positions, she was given the last position on her list. Plaintiff was specifically told that she was being given the Route Director of Silver Service, because of her experience and leadership skills.

20.     When Plaintiff was hired for the Route Director position, Plaintiff was given a tiered salary that was based on six-month reviews.

21.     Male Route Directors and other employees in the same pay grade/band were not given tiered salaries with a six month incremental review requirement.

22.     In May 2015, Plaintiff was a part of the Go-Team, an emergency team that was dispatched to Philadelphia after a derailment occurred. Eight people were killed during that

derailment and Plaintiff spent over a month in Philadelphia assisting individuals and families of individuals who were either injured or deceased.

23.     Following the derailment, Plaintiff injured her left leg, which became severely infected, and after referral to a vascular surgeon, her primary physician placed her on medical leave.

24.     Plaintiff was released to work with restrictions that limited her ability to travel and attend distant meetings in person. As a result, Plaintiff attended meetings by conference call.

25.     Plaintiff subsequently requested for an accommodation to telework up to three days per week for a period of three to six months and requested leave under the Family Medical and Leave Act ("FMLA") for intermittent leave.

26.     Plaintiff's FMLA request was approved on November 19, 2015 and her request for an accommodation was granted on November 23, 2015.

27.     Plaintiff used intermittent FMLA leave through September 20, 2015 because of her injury.

28.     On December 20, 2015, Plaintiff met with Tom Kirk, Deputy General Manager and Roger Casalengo, Vice President of Human Capital, about her performance review.

29.     Despite the language and five individual ratings were as follows: (2) "Exceed Goals," (2) "Materially Exceeded Goals" and (1) "Met Goal," Plaintiff received an overall "Met Goal" rating.

30.     Plaintiff asked for clarity on the rating system from Mr. Casalengo. In response, Mr. Casalengo stated that the rating system was working as intended and the reason for the "Met Goal" was because she had been "out most of the year."

4

31.     This statement was not only inaccurate as Plaintiff had taken approved intermittent FMLA leave, had been granted an accommodation to telework and four of her five individual ratings were above the "Met Goal" category.

32.     Mr. Casalengo then surprisingly and without any context, asked Plaintiff if she had considered other options outside of the organization. When Plaintiff flatly responded by asking Mr. Casalengo whether he was inviting her to leave the organization, Mr. Caslengo claimed he was inquiring about her goals and then informed Plaintiff that she could benefit from a mentor.

33.     Despite her 25+ years of management experience *with* the organization, Mr. Casalengo suggested a few people to "mentor" her. Plaintiff was never informed why she was being assigned a mentor.

34.     After requesting a woman of color to be her mentor, Plaintiff was placed with Ghada Ijam, Senior Vice President for IT, who had no experience with the demands of an operations manager.

35.     During this time period, no one else within the southeast region had been assigned a mentor, except for Plaintiff. Plaintiff informed Donna DiDomenico, Defendant's Human Resources Business Partner that she felt that she was being penalized and treated differently than her counterparts. Ms. DiDomenico did not investigate Plaintiff's complaints.

36.     In the spring of 2016, after much discussion with Mr. Kirk, Plaintiff placed her subordinate, Georgia DaCosta, Assistant Superintendent, on a Performance Improvement Plant ("PIP"). After working with Tracy Prentiss, Lead Employee Relations Specialist, to draft the document, Plaintiff presented the PIP and met with Ms. DaCosta over a seven-week period as

described in the PIP. Deborah Benham (Caucasian), Assistant Superintendent was present at all meetings.

37.     After the seven weeks were completed, Plaintiff was concerned that Ms. DaCosta was not responding to the required actions in the PIP. She documented her concerns and had conversation with Mr. Kirk and Ms. Prentiss.

38.     According to Defendant, Ms. DaCosta allegedly complained about Plaintiff's handling of the PIP.

39.     Despite Plaintiff's recommendations, Mr. Kirk extended Ms. DaCosta's PIP and removed the handling of the PIP from Plaintiff's purview without providing Plaintiff with any reasonable explanation.  Ms. Prentiss opposed the transferring of Ms. DaCosta's PIP from Plaintiff.

40.     Defendant did not remove other male and Caucasian managers who received similar complaints from their subordinates from the handling of their PIPs.

41.     Mr. Kirk eventually made the decision to terminate Ms. DaCosta's position for the same concerns Plaintiff raised before she was removed from the handling of the PIP.

42.     Frustrated with continuing patterns of undermining her leadership, Plaintiff repeatedly complained to Mr. Kirk about the systemic race and gender discrimination within the organization.

43.     Mr. Kirk responded to her complaints by stating "I know" and "No, it isn't fair, but what can I do." Mr. Kirk did not raise Plaintiff's complaints with Defendant's Human Resources Department or its leadership.

44.     Because Plaintiff felt that her leadership was not being valued, on September 1, 2016, Plaintiff interviewed for Manager of Crew Base, a position that was actually under Plaintiff's supervision, which she held in the past and for which she was more than qualified.

45.     She interviewed with Ms. Benham, Assistant Superintendent (Plaintiff's subordinate at the time) and Janet Burnett, Human Capital Talent Acquisition Officer. Ms. Benham and Ms. Burnett agreed Plaintiff was the most qualified for the position and selected her or the position.

46.     A few weeks later, on September 16, 2016, the Manager of Crew Base position was reposted, with approval from Mr. Kirk and Defendant began soliciting applicants for the position. Despite being actually selected for the position, Plaintiff was never offered the position.

47.     When she asked Mr. Kirk why the position was being re-posted, he informed her that Defendant "wanted to broaden the applicant pool" without further explanation. This decision was made after Plaintiff had already been selected for the position.

48.     Mr. Kirk never informed his supervisor Mark Murphy that Plaintiff actually had been selected for the Manager of Crew Base.

49.     During this time, Plaintiff complained to several Human Capital Business Partners, Jeanette Highnam, Ann Sherill & Donna DiDemenico, about the rate progression salaries for crafts that were predominately males within the same organization, *i.e.*, Train Masters and Road Foreman. There were no such progression programs in place for those positions that were not predominately male, which she directly supervised.

50.     One week later, on September 7, 2016, Mark Murphy, Vice President of Long Distance, advised Plaintiff that they would be eliminating her position and merging it with a Route Director position that had been vacant since April 1, 2016.

51.     Mr. Murphy did not offer Plaintiff the merged Route Director position, even though Plaintiff was successfully managing the Silver Service route. Plaintiff asked for an impact letter, however, none was provided to her at time.

52.     Interestingly, the Route Director for that vacant position and who Defendant employed for over 38 years, Kathy Brewer (African-American), who was also over 50, was placed on a Performance Improvement Plan by Mr. Kirk and was eventually forced into retirement.

53.     During that same conversation, Plaintiff raised the issue of her inconsistent 2015 Performance Review. Mr. Murphy stated they felt that Plaintiff had "checked out" that year.

54.     Plaintiff immediately objected to his statement and informed Mr. Murphy that she had been faced with medical conditions and that Defendant was well aware of her issues.

55.     It became very obvious to Plaintiff at this stage that Defendant was targeting her and attempting to intimidate and retaliate against her because of her complaints of Defendant's discriminatory practices.

56.     On October 11, 2016, after a Senior Managers "Calibration" meeting, Plaintiff asked Ann Sherrill if she could update her on the Manager of Crew Base position. Plaintiff informed Ms. Sherrill that she had interviewed for that position and that she had been informed that her position was being eliminated. Plaintiff further expressed her concern of being impacted without a position to land.

8

57.     On October 11, 2016, Route Director Jonathon Lombardi (Caucasian and younger than Plaintiff) contacted Plaintiff to ask her guidance of placing an employee on a PIP. Plaintiff guided Mr. Lombardi on the steps he needed to take and forwarded him a copy of the PIP she worked on with Tracy Prentiss.

58.     Although the employee on a PIP complained about Mr. Lombardi's handling of the PIP, Mr. Lombardi was able to execute the PIP and ultimately terminate his employee with no interference from Defendant.

59.     In November 10, 2016, Plaintiff spoke with Eric Hosey, Superintendent of Operations, one of the original Route Directors hired in September 2013. Mr. Hosey informed Plaintiff that when he was offered the Route Director position, it was without restrictions of a tiered salary or review periods.

60.     Mr. Lombardi was also not offered the Route Director position with restrictions of a tiered salary or review period.

61.     In January 2017, four months after she had been informed of her position elimination, Plaintiff still had not received an impact letter regarding her position.

62.     During this time, however, Mr. Kirk, Diane Rollins (Caucasian), Budget Director and Deborah Behnam (Plaintiff's subordinate) were meeting during this time, without inviting Plaintiff, regarding "department moves."

63.     That same month, Plaintiff objected to Mr. Kirk and Jeff Brown, District Managers' handling of the position elimination of employee, Keichie Campbell, an African-American female who had filed previous complaints for discrimination and retaliation.

64.     On January 13, 2017, Plaintiff received a meeting notice for all Route Directors scheduled for that same day at 9:30 a.m. titled the "Reorganization."

65.     The meeting notice included a previous meeting notice to the only three Caucasian Route Directors sent on January 10, 2017.  That meeting notice included a message from Mark Murphy advising the three Caucasian Route Directors of upcoming organizational changes and a request to meet with them to discuss the changes.  No such request had been made to Plaintiff or Anella Popo, the only other African-American Route Director.

66.     During the call, Mr. Murphy and Mr. Hall, then Vice-President of Customer Service, informed the Route Directors that there would only be three Directors moving forward.

67.     On or about February 2017 Plaintiff began experiencing anxiety attacks because of the stress associated with her work environment.  An EKG showed Plaintiff's heartbeat was abnormal and she was referred to a cardiologist for further review.

68.     On February 3, 2017, Plaintiff met with her direct reports to let them know that she would be seeking FMLA, she emailed her EKG to Tom Kirk and met with him to inform him of her intent to seek FMLA pursuant to her doctor's orders.

69.     On or about March 8, 2017, a conference call was held between Plaintiff, the other five Route Directors, Mark Murphy, Thomas Hall, the new Vice President of Customer Experience and Ann Sherrill.  During the conference call, Ms. Sherrill indicated that they were eliminating the Route Director position and forming a new position of Director of OBS.

70.     Ms. Sherrill further indicated that the interviews for the Director positions and the Senior Manager positions would not begin until after the Senior Director of OBS was in place. Interestingly, Ms. Sherrill specifically indicated once they had "him" in place.

71.     Cynthia Winslow, a Caucasian female Route Director for the New York region, was very annoyed and commented on the call that she was led to believe that the Route Directors would be appointed to these positions and that she had no idea she would be impacted.

72.     Following the call, Ms. Winslow contacted Plaintiff and specifically told Plaintiff that she had met with Mr. Hall on January 26, 2017.  Ms. Winslow informed Plaintiff that Mr. Hall discussed the plans for reorganization with her and that he had provided her with a copy of the proposed organization.

73.     Ms. Winslow then stated that Mr. Hall had led her to believe that if and when she applied for the position of Senior Director of OBS, she would be awarded the position.

74.     Ms. Winslow further informed Plaintiff that these discussions included all Route Directors, except for Anella Popo and Plaintiff, the two African American females.

75.     That same day, during another call with Mr. Hall and Ms. Sherrill, Plaintiff asked why she was not offered the Manager of Crew Base position that she had interviewed for in September 2016 and that was still vacant.  Ms. Sherill became very aggressive and stated that the position was four grades below Plaintiff's current position and that she was not going to be kept at her salary.

76.     Plaintiff informed Ms. Sherrill she was aware of the pay decrease when she applied.  Plaintiff further asked why the position had been reposted.  Ms. Sherrill did not have a response.

77.     Ms. Sherrill then informed Plaintiff that only one interview was required for any of the four Director positions and told Plaintiff that she should apply for any available position within the organization.

78.     On March 9, 2017 Plaintiff requested FMLA leave based on the anxiety and stress of her work environment.  She was approved for intermittent FMLA leave from February 14, 2017 to August 14, 2017.

79.     On April 8, 2017, Plaintiff spoke with Quinn McRae, who had been named the Senior Director of OBS, about the Manager of Crew Base and OBS Manager positions that had been vacant for almost a year.  Plaintiff asked how Ms. Benham, her Assistant Superintendent, would fit into the organization.

80.     Mr. McRae informed Plaintiff that Ms. Benham's position would "slide" over to the Senior Manager of OBS position for Miami.

81.     The Senior Manager of OBS position is a higher level/pay grade than Ms. Benham's Assistant Superintendent position.  Defendant's policies did not allow it to "slide" persons into positions for higher positions without posting the position or conducting interviews.

82.     During this time, Plaintiff interviewed for the Senior Manager, Crew Management Position on April 13, 2017.  She then interviewed for the Director of OBS on April 14, 2017 and the Manager Operation Redblock on April 18, 2017.

83.     Between April 4-12, 2017, during a conversation between Mr. Hall and Jay Fountain, then Route Director in Los Angeles, Mr. Hall asked Mr. Fountain to stay on as the acting Director of OBS-West.  Mr. Fountain indicated that he planned to retire and take the severance package offered by Defendant on March 8th.

84.     On April 20, 2017, Jonathon Lombardi, who had seven years railroad experience, contacted Plaintiff indicating that he received an offer for Director of OBS, Chicago.  Mr. Lombardi received an 8% salary increase upon his appointment to the Director of OBS position. The female Directors of OBS, however, Cynthia Winslow and Anella Popo, received no pay increase upon appointment.

85.     Upon information and belief, Defendant's legal department and human resources department rejected the original reorganizational chart provided to Ms. Winslow by Mr. Hall because it failed to include any African-American managers.

86.     It was only then that Anella Popo was selected as a Director of OBS – Southeast. Ms. Popo is younger than Plaintiff and Plaintiff previously supervised and trained Ms. Popo.

87.     Ms. Popo was offered the position of Director of OBS-Southeast prior to the completion of the interviews for the Director of OBS positions.

88.     On April 27, 2017, Plaintiff received a call from Tom Chawluk, hiring manager for the position of Senior Manager, Crew Management.  Mr. Chawluk advised that Defendant selected Darcie Platt-Hall (Caucasian) for the position.

89.     Mrs. Platt-Hall is the wife of Thomas Hall, Vice-President of Passenger Experience.  At the time, she was a C2 Level Manager and the position of Senior Manager, Crew Management was a D2 Level.

90.     Ms. Platt-Hall was removed from the position on or about June 1, 2017, because there was an anonymous complaint of conflict of interest.  Ms. Platt-Hall was replaced with Jeremy Crawford (Caucasian).

91.     On April 27, 2017, Plaintiff filed an internal complaint with Defendant complaining of discrimination and retaliation based on her race, gender, age and for her medical condition.

92.     On May 2, 2017, Shazrae Main, Defendant's Lead EEO Investigator, interviewed Plaintiff about her complaints.

93.     Following her call with Plaintiff that same day, Ms. Mian contacted Dequincy McRae and Thomas Kirk. Ms. Mian informed them about Plaintiff's complaint and interviewed them.

94.     On May 4, 2017, Plaintiff interviewed for the Superintendent of Station position. This position would oversee all stations in the region currently managed by Plaintiff for the past five years and previously managed when she was the Assistant Superintendent Operations, with the exception of two new stations.

95.     On May 16, 2017, Tom Kirk advised Plaintiff that he selected Michael Jerew (Caucasian and younger than Plaintiff) from Raleigh, N.C., for the Superintendent of Stations position.

96.     Plaintiff inquired as to why she was not selected especially given the fact that she had successfully managed these stations for the past five years. Mr. Kirk responded that he was not at liberty to discuss.

97.     During this conversation, Plaintiff began experiencing an anxiety attack. She asked Mr. Kirk if she could use her FMLA to go home. Mr. Kirk was well aware of Plaintiff's medical conditions.

98.     Following her conversation with Mike Mullen, a hearing officer. Mr. Mullens informed Plaintiff that a hearing officer position would be coming available in Chicago.

99.     Two days later, Mr. Mullen called Plaintiff and informed Plaintiff that the hearing officer position was temporary. Mr. Mullen also informed Plaintiff that he was just informing Plaintiff of what he had been "told to tell her." Mr. Mullen's direct manager was David Domzalski, Senior Associate Counsel for Amtrak and who would have been aware of Plaintiff's April 27, 2017 internal EEO complaint.

100. Mr. Mullen informed Plaintiff that the position was temporary and would need to be reposted. He further told her that he could not guarantee that she would be selected for the position.

101. On May 25, 2017, Plaintiff was unable to work based on the continuous stress and anxiety caused by her work environment and decided to use her intermittent FMLA leave. That same day, Mr. Kirk and Kim Devlin, Human Resources Representative contacted her. Plaintiff advised Mr. Kirk and Ms. Devlin that she was unwell and that she wanted to postpone any calls for the day.

102. Mr. Kirk refused and informed Plaintiff that she was being terminated and paid through June 8, 2017. The reason for Plaintiff's termination was that her position of Route Director had been eliminated and she had not yet obtained another position within the company.

103. At the time of Plaintiff's termination, Defendant had not concluded interviews or made offers for all open positions for which Plaintiff applied.

104. Subsequent to Plaintiff's termination, Defendant hired Danielle Simkunas, a Caucasian female for the District Manager position in Miami; a position that was vacant at the time of Plaintiff's termination. Ms. Simkunas did not have the requisite experience for the position.

105. The positions of Senior Manager of OBS and Senior Manager for Auto Train were posted on May 24, 2017. Plaintiff was terminated on May 25th and the last day to apply for those positions was the next day, May 26th.

106. Mr. Kirk listed Plaintiff as "ineligible for rehire" which made it impossible for Plaintiff to apply for these positions.

15

107.   Subsequent to Plaintiff's termination, Defendant changed the titles and/or of some of the positions applied for during her employment.

108.   The positions Plaintiff applied for after she was told that the Route Director position was eliminated were filled almost entirely by younger employees, most of whom were trained by Plaintiff, who had less experience than Plaintiff and/or were unqualified for the positions.

109.   The positions were also filed after the filing of Plaintiff's internal EEO complaint wherein she complained of race, age, gender and disability discrimination.  Upon information and belief, Defendant attempted to place diverse employees in those positions to avoid Plaintiff's claims.

110.   Following Plaintiff's termination, the leadership team for Miami included only Caucasian employees.

111.   The decision makers or approval for the hiring of a majority of the positions Plaintiff applied for were Thomas Kirk and Thomas Hall.

112.   Plaintiff was forced to see her therapist the day after her termination and Plaintiff was advised she needed to have a close friend or family with her throughout the weekend in case she experienced a severe anxiety attack.

113.   On May 30, 2017, Plaintiff was admitted to the hospital with chest pains.

114.   Plaintiff was a member of the Transportation Communication Union ("TCU") and as such could have exercised her seniority.

115.   Pursuant to the TCU's advice, Plaintiff applied for medical leave in order to extend the time to exercise her seniority.

116.   Defendant denied her leave and failed to place her on inactive leave status in violation of Defendant's agreement with TCU.

117.   Defendant then terminated Plaintiff from its system, making it impossible for Plaintiff to exercise her seniority.

**COUNT I: VIOLATION OF THE FCRA**
**RACE DISCRIMINATION**

118.   Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 117 of this Complaint.

119.   At all times material hereto, the Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 *et seq.*, which states, in part, that it is an unlawful employment practice for an employer: "To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's *race*, color, religion, sex, national origin, age, handicap, or marital status."

120.   Plaintiff is a member of protected classes of African-American/Black citizens.

121.   Plaintiff's race substantially motivated Defendant's discriminatory conduct towards her, as more fully described in paragraphs 9-117.

122.   The discriminatory conduct referred to in paragraphs 9-117 is and was offensive to Plaintiff and would be offensive to a reasonable person.

123.   Similarly situated employees who are not African-American/Black were not subjected to the conduct described and referred to in paragraphs 9-117.

124.   Plaintiff was and is qualified for any of the positions she applied for following Defendant's January 2017 reorganization.

125.    As a direct and proximate result of the Defendant's intentional conduct, Plaintiff has suffered, is now suffering and will continue to suffer emotional distress, humiliation, embarrassment and economic losses.

126.    Defendant would not have made the decision not to hire Plaintiff for the various positions for which she applied and terminate her if she was not African-American/Black.

127.    Any alleged nondiscriminatory reason for the treatment of Plaintiff by the Defendant is a mere pretext for the actual reason for discriminating against her based on her race.

128.    The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. § 760.10.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

    a.  Declare that the acts complained of herein are in violation of the FCRA;

    b.  Award Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

    c.  Award Plaintiff punitive damages;

    d.  Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race;

    e.  Order the Defendant to make Plaintiff whole, by compensating her for lost wages, benefits, including front pay, back pay with prejudgment interest;

    f.  Award a monetary judgment representing prejudgment interest;

    g.  Award any other compensation allowed by law including punitive damages and attorney's fees (448.104);

    h.  Grant Plaintiff costs of this action, including reasonable attorney's fees;

    i.  Grant such other and further relief as the Court deems just and proper.

## COUNT II: VIOLATION OF THE FCRA
## GENDER DISCRIMINATION

129.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 117 of this Complaint.

130.    At all times material hereto, the Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 *et seq.*, which states, in part, that it is an unlawful employment practice for an employer: "To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, national origin, age, handicap, or marital status."

131.    Plaintiff is a member of protected classes of female citizens.

132.    Plaintiff's gender substantially motivated Defendant's discriminatory conduct towards her, as more fully described in paragraphs 9-117.

133.    The discriminatory conduct referred to in paragraphs 9-117 is and was offensive to Plaintiff and would be offensive to a reasonable person.

134.    Similarly situated employees who are not female were not subjected to the conduct described and referred to in paragraphs 9-117.

135.    Plaintiff was and is qualified for any of the positions she applied for following Defendant's January 2017 reorganization.

136.    The Defendant violated the FCRA by discriminating against Plaintiff because of her gender in the terms, conditions, and privileges of her employment.

137.    As a direct and proximate result of the Defendant's intentional conduct, Plaintiff has suffered, is now suffering and will continue to suffer emotional distress, humiliation, embarrassment and economic losses.

138.    The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. §760.10.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

    a.  Declare that the acts complained of herein are in violation of the FCRA;

    b.  Award Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

    c.  Award Plaintiff punitive damages;

    d.  Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of gender;

    e.  Order the Defendant to make Plaintiff whole, by compensating her for lost wages, benefits, including front pay, back pay with prejudgment interest;

    f.  Award a monetary judgment representing prejudgment interest;

    g.  Award any other compensation allowed by law including punitive damages and attorney's fees (448.104);

    h.  Grant Plaintiff costs of this action, including reasonable attorney's fees;

    i.  Grant such other and further relief as the Court deems just and proper.

### COUNT III: VIOLATION OF FCRA
### AGE DISCRIMINATION

139.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 117 of this Complaint.

140.    Age is not a bona fide occupational qualification for any of the positions Plaintiff held while employed with Defendant or for which she applied after her position was eliminated during the Defendant's January 2017 reorganization.

141.    At all times material to this Complaint, Plaintiff performed her job as an employee of Defendant efficiently and satisfactorily.

142. Defendant created a work environment that was hostile to Plaintiff because of her age.

143. Defendant terminated Plaintiff from her employment because of Plaintiff's age.

144. Defendant relied on a pretextual explanation for Plaintiff's discharge that was designed to mask a discriminatory intent.

145. Defendant's termination of Plaintiff constituted an unlawful employment practice in violation of Fla. Stat. §760.10.

146. At the time the decision to terminate the Plaintiff was made, Defendant acted willfully and maliciously, with knowledge that Plaintiff's terminate violated the FRCA or in reckless disregard of that fact.

147. As a direct, substantial, and proximate result of Plaintiff's discriminatory discharge, Plaintiff has suffered and will continue to suffer substantial economic and noneconomic harm.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Determine that Defendant is liable for violations of the FRCA;

b. Award compensatory damages for Plaintiff's economic losses suffered by Plaintiff, including back pay and the value of lost benefits, and for Plaintiff's present and future emotional distress, anguish, humiliation, embarrassment, and loss of enjoyment of life;

c. Award punitive damages;

d. Grant equitable relief in the form of an award of front pay for loss of future income and benefits or, in the alternative, reinstatement to her position;

e. Granting equitable relief in the form of an injunction prohibiting Defendants from committing further violations of the FRCA;

f. Awarding prejudgment interest;

g. For the costs of this action, including a reasonable award of attorney's fees;

h.    For such other and further relief as may be just.

## COUNT IV: VIOLATION OF THE FCRA
## DISABILITY DISCRIMINATION

148.   Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 through 117 of this Complaint.

149.   Defendant's treatment of Plaintiff as described above is based on Plaintiff's handicap and Defendant's perception of the same.

150.   Defendant did not treat similarly situated, non-handicapped individuals in the same manner.

151.   Defendant thereby discriminated against Plaintiff in the terms, conditions and benefits of her employment in violation of the FCRA.

152.   Plaintiff has been subjected to disparate treatment because of her disability or handicap in violation of the FCRA, and because of such actions by Defendant she has suffered both irreparable injury and compensable damage unless and until this Court grants relief.

153.   As a direct and proximate result of the above-described actions of Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish. Furthermore, as a direct and proximate result of such actions by Defendant, Plaintiff has been, is being, and will be in the future, deprived of income in the form of wages and of prospective benefits solely because of Defendant's conduct.

WHEREFORE, Plaintiff, demands judgment against Defendant, as follows:

a.    Issue a declaration that the acts and practices of Defendant complained of in this Complaint are in violation of the FCRA;

b.    Award injunctive relief ordered by the Court enjoining and permanently restraining these violations of the FCRA by Defendant;

22

c. Award actual damages suffered, including lost wages, loss of fringe benefits and damages;

d. Award compensatory damages for past, present, and future mental anguish, pain and suffering, and humiliation caused by Defendant's intentional discrimination, according to proof;

e. Award punitive damages, according to proof;

f. Award Plaintiff the costs of this action together with reasonable attorney's fees, as provided by the FCRA; and

g. Award any other and further relief as the Court deems just and proper.

## COUNT V: VIOLATION OF THE FCRA
### RETALIATION

154.    Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 to 117 of this Complaint.

155.    Defendant's actions of terminating Plaintiff was in retaliation for her complaining to Defendant about the discrimination and harassment as more fully described in paragraphs 9-117 and Counts I –IV of this Complaint.

156.    Defendant's actions are retaliatory and/or created a chain of retaliatory acts in violation of the FCRA.

157.    The unlawful employment practices complained of herein and the actions of Defendant and its agents were and are willful, wanton, intentional and done with malice or with reckless indifference to Plaintiff's statutorily protected employment rights.

158.    Because of such actions by Defendant, Plaintiff has suffered and continues to suffer both irreparable injury and compensable damage unless and until this Court grants relief.

159.    As a direct and proximate result of the above-described actions of Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.  A declaration that the acts and practices of Defendant complained of in this complaint are in violation of the FCRA;

b.  Injunctive relief ordered by the Court enjoining and permanently restraining these violations of the FCRA by Defendant;

c.  Actual damages suffered, including lost wages, loss of fringe benefits and damages;

d.  Compensatory damages for past, present, and future mental anguish, pain and suffering, and humiliation caused by Defendant's intentional discrimination, according to proof;

e.  Punitive damages, according to proof;

f.  Award Plaintiff the costs of this action together with reasonable attorney's fees, as provided by FCRA; and

g.  Such other and further relief as the Court deems just and proper.

## COUNT VI: RETALIATION IN VIOLATION OF THE FWA

160.    Plaintiff re-states and re-alleges paragraphs 1 through 117 as if set forth in full herein.

161.    By and through its above-referenced conduct, Defendant's conduct as described more fully in paragraphs 9-117 were in violation of the FCRA, FMLA, 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 *et seq.* ("ADEA").

162.    Plaintiff, by and through her complaints and objections to Defendant's numerous violations of the above mentioned laws, and as described more fully in paragraphs 9-117, engaged in protected activity pursuant to the FWA.

163.   By and through its adverse actions of terminating Plaintiff and failing to hire her for any of the positions she applied for, Defendant violated Plaintiff's rights pursuant to the FWA.

164.   Defendant's actions are retaliatory and/or created a chain of retaliatory acts in violation of the FWA.

165.   As a direct and proximate result of Defendant's unlawful actions as set forth herein, Plaintiff has suffered damages and will continue to suffer damages in the future.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.   Declare that the acts complained of herein are in violation of the FWA;

b.   Reinstatement to her former position or a substantially equivalent position with the same benefits and compensation;

c.   Award Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

d.   Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of religion;

e.   Order Defendant to make Plaintiff whole by compensating her for lost wages, benefits, including front pay, back pay with prejudgment interest;

f.   For a monetary judgment representing prejudgment interest;

g.   Award any other compensation allowed by law including punitive damages and attorney's fees (Fla. Stat. §448.104);

h.   Grant Plaintiff costs of this action;

i.   Grant such other and further relief as the Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff requests a trial by jury on all issues so triable.

Dated: May 15, 2018.

By: */s/Ria N. Chattergoon*
    Ria N. Chattergoon, Esquire
    Fla. Bar No.: 015099
    RC Law Group
    3900 Hollywood Boulevard, Suite 301
    Hollywood, FL 33021
    Telephone: (954) 400-1620
    Facsimile:  (954) 400-1676
    Email: ria@therclawgroup.com

Filing # 72859652 E-Filed 05/30/2018 08:11:52 PM

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION**<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **WAIVER OF SERVICE OF PROCESS**<br>(c) Forms for Services by Mail.<br>(2) Waiver of Service of Process. | **CASE NUMBER**<br>2018-016235-CA-01 |
| **PLAINTIFF(S)**<br>KAREN SHANNON | **VS. DEFENDANT(S)**<br>NATIONAL RAILROAD PASSENGER CORPORATION, INC. D/B/A AMTRAK | **CLOCK IN** |

TO: RC LAW GROUP, 3900 HOLLYWOOD BOULEVARD, HOLLYWOOD, FL 33021

I acknowledge receipt of your request that I waive service of process in the lawsuit of _____ KAREN SHANNON _____ v. NATIONAL RAILROAD PASSENGER in the ☒ Circuit ☐ County Court in ELEVENTH CIRCUIT . I have also received a copy of the complaint, two copies of this waiver, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service process and an additional copy of the complaint in this lawsuit by not requiring that I, (or the entity on whose behalf I am acting), be served with judicial process in the manner provided by Fla. R. Civ. P.1.070.

If I am not the defendant to whom the notice of lawsuit and waiver of service of process was sent, and my authority to accept service on behalf of such person or entity is as follows: I declare that my relationship to the entity or person to whom the notice was sent and my authority to accept service on behalf of such person or entity is as follows:

(describe relationship to person or entity and authority to accept service) COUNSEL FOR DEFENDANT

   I, (or the entity on whose behalf I am acting), will retain all defense or objections to the lawsuit or to the jurisdiction or venue of the court except for any objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me, (or the party on whose behalf I am acting), if a written response is not served upon you within 60 days from the date I received the notice of lawsuit and request for waiver of service of process.

DATED ON 5/30/2018

_____
Defendant or Defendant's Representative

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."